UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 13-23246-CIV-GOODMAN

[CONSENT CASE]

A.P., a Minor, by IOLANY FEREZ,
Guardian and Individually,

    Plaintiffs,

v.

GLAXOSMITHKLINE, LLC,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This Cause is before the Court on Defendant GlaxoSmithKline LLC's ("GSK") Motion for Summary Judgment. [ECF No. 54]. GSK contends that the statute of limitations had run before Plaintiffs A.P., a minor, and Iolany Ferez ("Ferez"), A.P.'s mother (together, "Plaintiffs"), filed this products liability suit. [ECF No. 54, p. 1]. In response, Plaintiffs admit that the statute of limitations has run but argue that (1) equitable estoppel should bar summary judgment for GSK, and (2) full discovery is required to uncover GSK's purported fraud. [ECF No. 56]. GSK has replied [ECF No. 57], and the matter is now ripe for review. For the reasons set out below, GSK's motion is **GRANTED**.

I.      BACKGROUND

   A.  **Procedural Background**

On January 27, 2012, Ferez, individually and on behalf of her minor son, A.P., brought this product liability action against GSK in Pennsylvania state court. [ECF No. 1-1]. Plaintiffs alleged that Paxil, an anti-depressant manufactured by GSK, caused A.P. to be born with Tricuspid Atresia, Right Ventricular Hypertrophy, and a heart murmur. [ECF No. 1-1, p. 6]. GSK removed to the Eastern District of Pennsylvania and then transferred, without opposition, to the Southern District of Florida, where Plaintiffs reside and the events that gave rise to this action took place. [ECF Nos. 1; 22; 27].

   B.  **Undisputed Factual Background**

Ferez gave birth to A.P. in 1996. [ECF No. 54-1, p. 22].[1] Doctors noted at birth that A.P. had a heart murmur, and diagnosed him with a heart defect the next day. [*Id.* at p. 13]. A.P.'s heart defect was classified as a tricuspid atresia type II-B, a condition that has required two corrective procedures and regular cardiology visits throughout his life. [*Id.* at p. 15].

Ferez testified that she suspected Paxil caused A.P.'s heart defect almost immediately because she had taken it throughout the first six weeks of her pregnancy with A.P. [*Id.* at pp. 16-17, 45-46]. She had not taken anything during her first two pregnancies and both children were born without defects. [*Id.* at pp. 19-20]. Ferez asked

---

[1]      All citations are to the ECF page number, not the transcript page number.

2

A.P.'s cardiologist, Dr. Aldousany, and her gynecologist, Dr. Ruiz, whether Paxil may have caused A.P.'s heart condition. [*Id.* at p. 19]. Both responded that they did not know. [*Id.*]. From 1996 to 2002, Ferez spoke with A.P.'s cardiologist three or four additional times about the possibility that Paxil might have caused A.P.'s heart defect. [*Id.* at pp. 23-24].

On December 20, 1997, Dr. Marcio Ferez, Ferez's father, employer,[2] and primary care physician, noted in Ferez's medical records that A.P.'s heart defect was "apparently due to" Paxil. [ECF No. 54-5, p. 4]. In September 2005, GSK mailed a letter to Dr. Ferez and other healthcare professionals advising them of a recent study that showed Paxil was associated with an increased risk of congenital malformations, most commonly cardiovascular. [ECF No. 54-7]. A second letter was sent in December 2005, advising of an additional study showing an increased risk for cardiovascular malformations in infants born to women who had first trimester Paxil exposure. [ECF No. 54-8]. Dr. Ferez confirmed receiving the second letter. [ECF No. 54-6, p. 10]. Dr. Ferez also testified that if his daughter asked around that time whether Paxil caused A.P.'s condition, he would have told her about the letter. [*Id.* at p. 11].

II.  **LEGAL STANDARD**

Summary judgment is appropriate where the pleadings, depositions and affidavits show that there are no genuine issues of material fact, and that the moving

---

[2]  Ferez has worked at her father's medical practice since 1985. In addition, A.P. and Ferez live with Ferez's parents.

3

party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen*, 121 F.3d at 646. While the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn from it in the light most favorable to the non-moving party and determine whether the evidence could reasonably sustain a jury verdict for the non-movant. *Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.

**III. DISCUSSION**

**A. Applicable Legal Framework: Florida's Statute of Limitations**

Florida has a four-year statute of limitations for product liability cases. Fla. Stat. § 95.11(3)(e). The statute begins to run "from the date that the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.031(2)(b). Courts have interpreted this to mean "that the statute of limitations on a product liability action begins to run when a plaintiff (1) knows that she was injured, and (2) has notice of a *possible* connection between her

injury and the product at issue." *In re Trasylol Prod. Liab. Litig.*, No. 08-1928-MD, 2010 WL 6098570, at *5 (S.D. Fla. Mar. 8, 2010) (internal citations omitted) (emphasis added).

Generally, the statute of limitations is not tolled during a child's minority. There are, however, three exceptions: (1) the minor does not have a parent, guardian, or guardian ad litem, (2) the minor's parent or guardian has an adverse interest to the minor, or (3) the minor's parent or guardian is adjudicated to be incapacitated to sue. Fla. Stat. § 95.051. Here, no party contends that any of these exceptions apply.

### B. The Statute of Limitations Has Run

GSK argues that the statute of limitations bars Plaintiffs' claim because Ferez had actual and constructive knowledge that A.P.'s heart defect may have been caused by Paxil. [ECF No. 54, p. 12]. In response, Plaintiffs admit that Ferez suspected Paxil was the cause of A.P.'s condition but assert that equitable estoppel should bar GSK's statute of limitations' arguments. [ECF No. 56, p. 1 ("Ferez admittedly suspected Paxil as a possible cause of" A.P.'s birth defects)]. Plaintiffs also argue that summary judgment is not appropriate because full discovery is needed to uncover GSK's alleged fraud.

The Court will first examine[3] whether Ferez had actual and constructive knowledge, as GSK alleges. Next, the Court will analyze Plaintiffs' equitable estoppel and full-discovery arguments.

---

[3] The Court notes that Plaintiffs' response was filed well after the summary judgment response time provided for in the Local Rules. Plaintiffs never provided the Court with an explanation as to why their response was late nor requested an extension

1. *Ferez had Constructive and Actual Knowledge*

A plaintiff's knowledge need not rise to the level of legal certainty for the statute of limitations to start running. *See In re Trasylol*, 2010 WL 9098570, at *5. Instead, a plaintiff "need only have notice, through the exercise of reasonable diligence, of the possible invasion of [his] legal rights." *Univ. of Miami v. Bogorff*, 583 So. 2d 1000, 1004 (Fla. 1991). The rationale for this is simple: "[i]f potential lay claimants were required to possess a professional level of knowledge before a cause of action were discoverable, then theoretically the claimant's action would almost never accrue." *Byington v. A.H. Robins Co., Inc.*, 580 F. Supp. 1513, 1517 (S.D. Fla. 1984).

Ferez had notice of the possible invasion of her legal rights by December 20, 1997. On that day, Dr. Ferez indicated in Ferez's medical records that A.P.'s condition was "apparently due" to Paxil. [ECF No. 54-5, p. 4]. Knowledge of accessible medical records is imputed. *Bogorff*, 583 So. 2d at 1004. It is undisputed that Ferez had access to her medical records as both a patient of Dr. Ferez, and as an employee. [ECF No. 54-6, p. 5]. Thus, Ferez had the constructive knowledge necessary for the statute of limitations to start running as early as 1997. *See Fields v. Mylan Pharm., Inc.*, 751 F. Supp.

---

of time to file their response. On these grounds alone, the Court would be well within its discretion to consider GSK's motion unopposed and grant summary judgment to GSK. *Simon v. Kroger Co.*, 743 F.2d 1544, 1546 (11th Cir. 1984) (affirming trial court's summary judgment order in favor of defendant on statute of limitations where court found defendant's motion unopposed because plaintiff failed to timely respond). The Court, however, is not doing that here -- and will evaluate the tardy response (and the initial motion) on the merits.

2d 1260, 1262 (N.D. Fla. 2009) (cause of action accrued when plaintiff heard a doctor tell his mother that his injuries "likely resulted" from his use of the defendant's drug).

A plaintiff possesses knowledge of a possible causal link between an injury and a defendant's product when a physician informs the plaintiff that such a link is possible. *In re Trasylol*, 2010 WL 6098570, at *5 (plaintiff was on notice that defendant's product might be the cause of her renal failure when nephrologist indicated it *might* be the cause); *Byington*, 580 F. Supp. at 1516-17 (holding plaintiff's cause of action accrued once doctor notified her of his suspicions regarding relationship between the IUD and her pelvic inflammatory disease). Here, Ferez's deposition testimony reveals that she also had actual knowledge of the invasion of her legal rights from the day A.P. was born. By her own admission, Ferez suspected that Paxil was the cause of A.P.'s condition almost immediately. [ECF No. 54-1, pp. 40-41]. In addition, Dr. Ferez, her father, also informed Ferez that "he really thinks it was the Paxil" that caused A.P.'s condition the day he was diagnosed. [ECF No. 54-1, p. 33].

2. *Plaintiff's Equitable Estoppel Argument*

"The doctrine of estoppel is applicable in all cases where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury." *State ex rel. Watson v. Gray*, 48 So. 2d 84, 87–88 (Fla. 1950). The purpose of the doctrine is to "bar[] the wrongdoer from asserting [a legal

shortcoming] and profiting from his or her own misconduct." *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1077 (Fla. 2001).

Plaintiffs assert that GSK fraudulently concealed Paxil's risks and therefore should be estopped from raising a statute of limitations as a grounds for summary judgment. This argument fails for several reasons.

First, to show fraudulent concealment in this context, Plaintiffs must show 1) GSK successfully concealed the cause of action, and 2) GSK employed fraudulent means to achieve that concealment. *Byington*, 580 F. Supp. at 1518 (internal citations omitted). Plaintiffs have put forth nothing that would establish a genuine issue of fact to support this fraudulent concealment theory so as to preclude summary judgment. *See In re Trasylol*, 2010 WL 6098570, at *8-9 (rejecting fraudulent concealment argument in granting summary judgment for defendant drug-manufacturer on statute of limitations).

Second, under Florida law, the failure of a possibly responsible party to ascertain and publish the fact of its responsibility is insufficient to constitute fraudulent concealment. *Byington*, 580 F. Supp. at 1518. Here, GSK *actually twice published* its responsibility for injuries potentially caused by Paxil. [*See* ECF Nos. 54-7, 54-8]. Dr. Ferez acknowledged receiving GSK's December 2005 letter warning healthcare professionals of the risks Paxil posed to pregnant women. **Any fraudulent concealment by GSK ended with this letter in 2005.** Plaintiffs brought suit in 2012, [ECF No. 1-1],

meaning their claim would *still* be barred by the four-year statute of limitations. *Id.* (noting that "[w]hatever fraudulent concealment existed, however, ended …when the Defendant publicly warned the physicians of the possible danger associated with the [product] and removed the product from the market").

    3. *Full-Discovery Argument*

Plaintiffs' argument that full discovery should take place before a decision is made on GSK's motion is unpersuasive. Plaintiffs *agreed*, in the joint status report and on the record before the Court, to limit discovery to the statute of limitations issues for the first six months of discovery. [ECF Nos. 38, pp. 2-3, 48; 49, pp. 8-9]. Plaintiffs had ample opportunity to object to limited discovery: they did not. Plaintiffs cannot now claim that a discovery limitation they agreed to was unfair and should prevent summary judgment.

Furthermore, Plaintiffs' argument that they need full discovery to prove fraudulent concealment is unavailing. As discussed above, any fraudulent concealment ended in late 2005, more than six years before Plaintiffs filed suit. The statute of limitations would still apply under this fraudulent concealment theory. Therefore, the Court finds that Plaintiffs are not entitled to full discovery.

## IV.   CONCLUSION

Although the Court is sympathetic to A.P.'s condition and injuries and recognizes that Paxil may well be responsible for his birth defect, "liability cannot rest

on sympathy alone." *Weiner v. Carnival Cruise Lines*, No. 11-CV-22516, 2012 WL 5199604, at *6 (S.D. Fla. Oct. 12, 2012). Accordingly, based on the undisputed facts and Plaintiffs' own admissions, the Court finds that the statute of limitations has run on Plaintiffs' claims and, therefore, GSK's summary judgment motion is **granted**. *Cf. In re Trasylol*, 2010 WL 6098570, at *9 (granting summary judgment to defendant in products liability case based on statute of limitations).

**DONE AND ORDERED,** in Chambers, in Miami, August 12, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record